# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| CENTIMARK CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:11-CV-720 CAS |
| | ) | |
| PHILIP J. CHRISTOFFERSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants Philip J. Christofferson and Cockriel and Christofferson L.L.C.'s motion for summary judgment. Plaintiff opposes the motion, which is fully briefed and ready for disposition. For the following reasons, defendants' motion for summary judgment will be granted.

## I. Background

This is an action for legal malpractice arising from defendants' representation of CentiMark Corporation ("CentiMark") in the case Liberty Mutual Fire Insurance Company v. CentiMark Corporation, 4:08-CV-230 DJS. CentiMark was sued over damages when a roof it installed peeled back during a storm causing significant damage to the building and its contents. Liberty Mutual Fire Insurance Company ("Liberty Mutual") sued CentiMark for breach of the installation contract and for negligence on behalf of Loy Lange Box Company ("Loy Lange"), the owner of the building.

CentiMark hired defendants Philip Christofferson and his firm Cockriel and Christofferson L.L.C. to defend the company in the lawsuit. After an adverse ruling on a partial summary judgment motion, CentiMark terminated its relationship with defendants, and hired new counsel. The case

went to trial with new counsel. The case was submitted to the jury, which rendered a verdict against CentiMark. CentiMark appealed, but ultimately the parties settled.

CentiMark now brings a claim of legal malpractice against defendants Philip J. Christofferson and Cockriel and Christofferson L.L.C. In its complaint, plaintiff alleges defendants were negligent in that they failed to take depositions of material witnesses; did not list witnesses in a timely manner, and therefore their testimony was unavailable at trial; did not adequately prepare witnesses for depositions; failed to make appropriate discovery requests or produce documents that would have aided in the defense; failed to list or designate appropriate expert witnesses; failed to plead contributory negligence and raise the economic loss doctrine; failed to name the correct party in the counterclaim; and did not fully investigate the facts and circumstances at issue.

Defendants answered the complaint and denied the allegations. In addition, they have brought a counterclaim against CentiMark for their attorneys' fees. Defendants now move for summary judgment as to all the claims against them.

## II.  Standard of Review

The standard applicable to summary judgment motions is well-settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Ia. v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then

shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence he or she must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 quoting Anderson, 477 U.S. at 248. A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). "Self-serving, conclusory statements without support are not sufficient to defeat summary judgment." Armour and Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993).

In passing on a motion for summary judgment, it is not the court's role to decide the merits. The court should not weigh evidence or attempt to determine the truth of a matter. Rather, the court must simply determine whether a genuine issue of material fact exists. Bassett v. City of Minneapolis, 211 F.3d 1097, 1107 (8th Cir. 2000).

With this standard in mind, the Court accepts the following facts as true for purposes of resolving this motion for summary judgment.

### III. Facts

CentiMark is in the business of installing roofs on commercial properties. On August 14, 2000, Loy Lange and CentiMark entered into a contract for the installation of a new roof on Loy Lange's commercial property.

The parties in this case dispute what documents comprised the contract between CentiMark and Loy Lange. Defendants maintain that the contract was a four-page document dated August 14, 2000. See Doc. 89, Ex. A. The only reference to a warranty in this document is on the Proposal Summary which states: "WARRANTY: Twenty (20) Year Labor and Material Total System Warranty." Id. Plaintiff asserts that the contract between CentiMark and Loy Lange also included CentiMark's "Non-Prorated Limited Roof Warranty - EPDM Roof Systems," which is dated October 4, 2000 ("Non-Prorated Warranty"); the Job Completion Form, dated October 4, 2000; and a three-ring binder, which included promotional materials from CentiMark as well as a sample warranty ("the Proposal Binder"). See Doc. 89, Exs. 1-3.

It is undisputed in the current litigation that after the roofing job was completed, CentiMark mailed to Loy Lange the Non-Prorated Warranty dated October 4, 2000. The Non-Prorated Warranty states, in part:

> This Warranty Agreement is understood to be the complete and exclusive warranty agreement between the Purchaser and CentiMark, superseding all prior agreements, whether oral or written, and all other communications between the parties relating to the subject matter of this warranty. Any additional or contradictory warranty terms of conditions stated in Purchaser's order/acceptance documents other written communication, shall not be valid or binding upon CentiMark under any circumstances, unless specifically adopted and approved by written response from CentiMark.

Sometime after August 14, 2000, CentiMark installed the roof on Loy Lange's property. On July 19, 2006, a severe store hit the St. Louis region. The roof on the Loy Lange building peeled back during the storm. Water entered the building and damaged offices and equipment.

On February 14, 2008, Liberty Mutual, a subrogee of Loy Lange, filed a two-count complaint in the United States District Court, Eastern District of Missouri against CentiMark for negligence and breach of contract. The case was assigned to the Honorable Donald J. Stohr, and was captioned Liberty Mutual Fire Insurance Company v. CentiMark Corporation, No. 4:08-CV-230 DJS ("Underlying Litigation"). In the complaint in the Underlying Litigation, Liberty Mutual alleged that CentiMark had breached its duty of care in failing to install a properly fully adhered roof system. See 4:08-CV-230 DJS, Doc. 1.[1] Liberty Mutual sought recovery against CentiMark in the amount of $1,234,735.81 for CentiMark's allegedly negligent installation of a roof and for breach of contract.

Philip Christofferson and his firm, Cockriel and Christofferson, L.L.C., entered an appearance on CentiMark's behalf. Mr. Christofferson filed an answer in which he asserted as an affirmative defense that Liberty Mutual's claims were barred by a one-year limitations period set forth in "the Express Warranty that was negotiated by Loy Lange and CentiMark as part of their contract dated August 14, 2000," and that this warranty excluded "any special, incidental, or consequential damages," including "lost profits or revenue, cost of substitute equipment, facilities or services, business interruption, and the cost of repairing and/or replacing other property when the roof services so no perform as warranted." See 4:08-CV-230 DJS, Doc. 7 at 4-5.

---

[1]The Court takes judicial notice of the entire docket and court documents in the Underlying Litigation. Great Plains Trust Co. v. Union Pac. R.R. Co., 492 F.3d 986, 996 (8th Cir. 2007) (federal court may take judicial notice of proceedings in other courts that directly affect matter at issue).

Mr. Christofferson filed a motion to dismiss and moved to dismiss Liberty Mutual's tort claim on the ground that Liberty Mutual was improperly trying to "recast" its contract claim as a tort claim. See 4:08-CV-230 DJS, Doc. 9. Citing Missouri law, Mr. Christofferson argued, "[w]here the only damage complained of is an economic loss resulting from defects in the item built pursuant to a contract, a negligence action does not lie." See 4:08-CV-230 DJS, Doc. 10 at 2. Mr. Christofferson cited Business Men's Assurance Co. of America. v. Graham, 891 S.W.2d 438, 453 (Mo. App. 1994) and Summer Chase Second Addition Subdivision Homeowners Association v. Taylor-Morley Inc., 146 S.W.3d 411, 417 (Mo. App. 2004) in his brief. Liberty Mutual opposed CentiMark's motion to dismiss its negligence claim on the ground that the economic loss doctrine does not apply where there is damage to other property not covered by the contract. Liberty Mutual argued that its negligence claim was not subject to the economic loss doctrine because it was seeking recovery for damages to real property and personal property within the building – in other words, beyond what was covered by the contract. See 4:08-CV-230 DJS, Doc. 11 at 2-3. On December 29, 2008, Judge Stohr denied CentiMark's motion to dismiss Liberty Mutual's negligence claim. See 4:08-CV-230 DJS, Doc. 25 at 2-3. In his Order Judge Stohr wrote:

> Under Missouri law, "a mere breach of contract does not provide a basis for tort liability...." Bus. Men's Assur. Co. of Am. v. Graham, 891 S.W.2d 438, 453 (Mo. App. 1994) (citing Am. Mortg. Inv. Co. v. Hardin-Stockton, 671 S.W.2d 283, 293 (Mo. App. 1984)). However, "the negligent act or omission which breaches the contract may serve as the basis for an action in tort." Id.; see also Preferred Physicians Mut. Mgmt. Group v. Preferred Physicians Mutual Risk Retention, 918 S.W.2d 805, 813 (Mo. App. 1996) ("Missouri law recognizes that a tort may be committed in the nonobservance of contract duties and that a negligent failure to perform a contractual undertaking may result in tort liability.").
>
> > If the duty arises solely from the contract, the action is contractual. The action may be in tort, however, if the party sues for breach of a duty recognized by the law as arising from the relationship or status the parties have created by their agreement.

Graham, 891 S.W.2d at 453; see also Preferred Physicians, 918 S.W.2d at 814 ("[A] mere failure to complete the undertaking required by contract would not give rise to a cause of action in tort; the remedy for such failure to act would lie in contract. The courts in Missouri have never recognized a mere breach of contract as providing a basis for tort liability.").  As an example, the court in Graham noted that failure of a real estate broker to perform his contractual and fiduciary duties would support an action either for breach of contract or for negligence.

See 4:08-CV-230 DJS, Doc. 25 at 4.  Judge Stohr found Liberty Mutual had pleaded in its complaint the existence of a duty "to perform the disputed roof replacement in a good and workmanlike manner so as not to cause damage to the property of Loy Lange and others" – an alleged duty that did not arise solely in contract.  Id. at 5.

Mr. Christofferson also filed on CentiMark's behalf a counterclaim against Liberty Mutual in the amount of $26,036.00 for an unpaid invoice for the emergency repairs CentiMark had preformed on Loy Lange's roof following the storm.  See 4:08-CV-230 DJS, Doc. 8.  Liberty Mutual moved to dismiss CentiMark's counterclaim on the ground that it was made against the wrong party in interest.  Liberty Mutual argued the claim must be brought against Loy Lange. The district court agreed, and on December 29, 2008, Judge Stohr dismissed, without prejudice, CentiMark's counterclaim for the unpaid invoice.  See 4:08-CV-230 DJS, Doc. 25.

The parties proceeded to discovery.  In preparation for summary judgment and trial, Mr. Christofferson interviewed and spoke with a number of CentiMark employees, including Brad Ferguson, Mark Columbatto, Kurt Schneider, Ed Hurley, and Steve Brauns.  He did not, however, attempt to contact Robert Leicht, a former employee of Loy Lange, who had negotiated and entered into contract on behalf of Loy Lange.  CentiMark claims it was negligence for defendants not to have located and contacted Mr. Leicht.  Mr. Leicht was later deposed in a related matter, and he testified that he did receive the Non-Prorated Warranty after the roof was installed, and that there

was a copy of a sample warranty in the Proposal Binder, which he received during the contract negotiations.

CentiMark alleges that during the Underlying Litigation Mr. Christofferson and his firm were negligent in that they did not properly prepare witnesses who were deposed by Liberty Mutual so that they could recall facts from earlier events. CentiMark identified CentiMark employees Steven Brauns, Edwin Hurley, Kurt Schneider, Brad Ferguson, Mark Columbato, and Robert Dennis as witnesses who were not properly prepared for their depositions. The parties dispute as to with whom Mr. Christofferson met and for how long. But it is undisputed that in defending the Underlying Litigation, Mr. Christofferson met with three of the witnesses, Mr. Schneider, Mr. Hurley and Mr. Brauns, as a group for at least one and one half hours. It is also undisputed that CentiMark witnesses testified truthfully during their depositions.

CentiMark also claims that in the Underlying Litigation Mr. Christofferson and his firm failed to make appropriate written discovery requests for documents, and they failed to produce documents that would have aided in the defense of the Underlying Litigation. More specifically, in its response to written discovery requests in the current suit, CentiMark stated that defendants should have produced the Proposal Binder, which contained the original roofing proposal and a sample warranty. Brian Raymore, Senior Vice President of CentiMark's Safety and Risk Department and the corporate representative in this case, however, testified that he did not inform Mr. Christofferson about the Proposal Binder until after the discovery period had closed. CentiMark did not identify any other documents that should have been produced. CentiMark identified no specific documents defendants should have requested in written document requests.

On February 20, 2009, Liberty Mutual filed a motion for partial summary judgment in the Underlying Litigation. See 4:08-CV-230 DJS, Doc. 30. In its motion, Liberty Mutual argued that CentiMark's affirmative defenses based on the Non-Prorated Warranty failed as a matter of law because the Non-Prorated Warranty, which was dated October 4, 2000, was not part of the August 14, 2000 contract between CentiMark and Loy Lange. Liberty Mutual argued that CentiMark and Loy Lange did not negotiate for the Non-Prorated Warranty and it was not included in the original contract accepted by Loy Lange. It argued that even if CentiMark had sent the Non-Prorated Limited Roof Warranty after completion of the roof installation, it was not supported by new and separate consideration, and therefore it was not an agreed upon contract.

Mr. Christofferson filed a response in opposition on behalf of CentiMark in which he argued that the contract between CentiMark and Loy Lange specifically referred to a "Twenty (20) Year Labor and Material Total System Warranty," which is what the Non-Prorated Warranty is, a twenty-year warranty. He argued that while CentiMark was without personal knowledge as to whether Loy Lange actually received the Non-Prorated Warranty, CentiMark mailed the document and final invoice to Loy Lange on October 4, 2000, following completion of the roof installation.

Liberty Mutual replied that testimony of CentiMark own employees, Brad Ferguson and Mark Columbato, supported Loy Lange's position that the warranty was never part of the contract or the contract negotiations. Liberty Mutual also argued that according to the testimony of Rod Powers, an employee of Loy Lange, the Non-Prorated Warranty was never received by Loy Lange.

The parties in the current litigation, however, now agree that Loy Lange did in fact receive the Non-Prorated Warranty sometime shortly after the roof was installed. And there is evidence that representatives of CentiMark and Loy Lange discussed a warranty during the contract negotiations,

and there was a sample warranty in the Proposal Binder.[2]  CentiMark argues that as a result of defendants' negligence these facts were not brought to Judge Stohr's attention on summary judgement.

On June 5, 2009, the district court granted Liberty Mutual's motion for partial summary judgment  <u>See</u> 4:08-CV-230 DJS, Doc. 66.  In his Memorandum and Order Judge Stohr wrote:

> It is possible for a contract to incorporate the terms of a separate, noncontemporaneous, and even unsigned document by reference.  However, such a document becomes a part of the agreement only if "the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt." <u>Livers Bronze, Inc. v. Turner Const. Co.</u>, 264 S.W.3d 638, 643 (Mo. App. 2008) (quoting <u>Intertel, Inc. v. Sedgwick Claims Mgmt. Servs.</u>, Inc., 204 S.W.3d 183, 196 (Mo. App. 2006)).  If a document is not adequately referenced and therefore is not part of the agreement, that document does not have any legal effect unless it independently possess all elements necessary to form a contract.  <u>Medicare Glaser Corp. v. Guardian Photo, Inc.</u>, 936 F.2d 1016, 1019-20 (8th Cir. 1991).

>> It is well established that an agreement to modify a contract must itself possess all the elements necessary to form a contract, including the element of consideration. "Such consideration is not present when one party merely agrees to do that which it was already legally liable to do for a greater consideration, nor is it present when one party agrees to do less than it is already obligated to do for the same or greater consideration."

> <u>Id.</u> (quoting <u>Twin River Constr. Co. v. Pub. Water Dist. No. 6</u>, 653 S.W.2d 682, 690 (Mo. App. 1983)); <u>see also</u> <u>Jackson v. Baldwin-Lima- Hamilton Corp.</u>, 252 F. Supp. 529, 535 (E.D. Pa. 1966) ("It is the general rule that a contract of warranty requires consideration. If it comes into existence at the time of the sale it is supported by the consideration of the sale, but if it is given after the contract of sale is completed, it must be accompanied by a new and separate consideration.").

---

[2]The current parties, however, do not agree as to what sample warranty was in the Proposal Binder given to Loy Lange.  Defendants point out that the Proposal Binder CentiMark produced in the current litigation contained a sample warranty entitled "Non-Prorated Limited Roof Warranty - EPDM Roof Systems" but the sample proposal binder identified by Mr. Leicht in his deposition contained a sample warranty entitled "Non-Prorated Limited Roof Warranty - Thermoplastic Roof Systems."

In this case, [CentiMark] argues that the parties' contract, executed before [CentiMark] commenced any roofing work, clearly references and incorporates a separate warranty agreement. The Court disagrees. The contract between Loy Lange and [CentiMark] refers to a "Twenty (20) Year Labor and Material Total System Warranty." The later-issued Warranty is entitled "NON-PRORATED LIMITED ROOF WARRANTY - EPDM ROOF SYSTEMS." Nowhere in the Warranty is it described as the "Twenty (20) Year Labor and Material Total System Warranty" referred to in the parties' contract. Indeed, the Warranty appears to constitute a separate agreement, in that it contains a clause which claims that the Warranty is to "supersed[e] all prior agreements," including any "terms or conditions stated in [the parties' contract]." The Court finds that the contract between Loy Lange and [CentiMark] does not make clear reference to the Warranty, and that the contract does not describe the Warranty in such terms that the Warranty's identity may be ascertained beyond doubt. Consequently, the Warranty was not made part of the agreement between Loy Lange and [CentiMark] at the time of the inception of their contract.

[CentiMark] does not dispute that separate consideration was not exchanged at the time of the issuance of the Warranty. As separate consideration is needed under Missouri law to give a modification legal effect, the Warranty was not made part of the agreement between Loy Lange and [CentiMark] at the time [CentiMark] mailed the Warranty to Loy Lange.

The Court finds that the Warranty was not clearly referenced by the contract between Loy Lange and [CentiMark] , and further finds that it is not disputed that separate consideration was not exchanged at the time the Warranty was issued. Accordingly, the Warranty was never made part of the agreement between Loy Lange and [CentiMark] . The Court will therefore grant plaintiff's motion for partial summary judgment with regard to [CentiMark]'s third and forth affirmative defenses.

See 4:08-CV-230 DJS, Doc. 66.

On June 22, 2009, after Judge Stohr granted partial summary judgment in Liberty Mutual's favor, attorney Allen Press entered his appearance on behalf of CentiMark.[3] See 4:08-CV-230 DJS, Doc. 76. Defendants Philip Christofferson and Cockriel and Christofferson, L.L.C. moved to

---

[3]Attorney John P. Liekar moved to appear pro hac vice on June 23, 2009, and attorney Phillip Boyd entered his appearance on July 23, 2009. See 4:08-CV-230 DJS, Docs. 78 & 95.

withdraw that same day.  See 4:08-CV-230 DJS, Doc. 77.  Mr. Press moved to set aside the June 5, 2009 Order on the motion for partial summary judgment.  Judge Stohr denied the motion.

In preparation of trial, Liberty Mutual and CentiMark filed their pretrial compliance materials, including a number of motions in limine and motions to exclude expert testimony. Liberty Mutual moved to bar H. Michael Mogil, CentiMark's meteorology expert, from testifying as to how on the day of the storm the wind speed increased after it impacted the Loy Lange building. See 4:08-CV-230 DJS, Doc. 55.  Liberty Mutual also moved to preclude Mr. O'Connell, CentiMark's roofing expert, from testifying as to the condition of the masonry at the Loy Lange building. See 4:08-CV-230 DJS, Doc. 57.  Liberty Mutual argued Mr. O'Connell was not a masonry expert and therefore he did not have sufficient expertise to offer opinions regarding the brink masonry wall and its relationship to the uplift in the roof.  Liberty Mutual also moved that Mr. O'Connell be barred from providing testimony as to the speed of the winds on the day of the storm. See 4:08-CV-230 DJS, Doc. 82.

On September 9, 2009, following oral arguments, Judge Stohr issued a written order ruling on the pre-trial motions.  Among other things, Judge Stohr ruled that CentiMark weather expert, Mr. Mogil, could offer opinion testimony as to wind speed and change in the wind speed, and he denied Liberty Mutual's motion to exclude this expert's testimony.  See 4:08-CV-230 DJS, Doc. 107 at 5. Judge Stohr also ruled that CentiMark's roofing expert, Kevin O'Connell, could give a description of the condition of the masonry at the Loy Lange Building, and he could offer an opinion regarding the difficulty of attaching a wood nailer to crumbling masonry.  Id. at 6-8.  Judge Stohr also ruled that if the proper foundation was laid, Mr. O'Connell could testify regarding the condition of the plywood under the roof, and the wind load of the roof.  Judge Stohr ruled, however, that Mr.

O'Connell's was not qualified to give an expert opinion on the condition of the masonry or the role the condition of the masonry played in the roof uplift.  Id.  Liberty Mutual's motion to preclude Mr. O'Connell from testifying regarding wind speed was denied as moot, as CentiMark's new counsel stipulated that Mr. O'Connell would not testify as to wind speed at trial  Id.

On September 2, 2009, Mark Sielfleisch's evidentiary deposition was taken for use at trial. Mr. Sielfleisch was third-party roofer who had worked on the Loy Lange roof in 2006 following the storm.  He was disclosed as a fact witness, not an expert witness.  Mr. Sielfleisch was unavailable at trial and his deposition was videotaped to play at trial.  Following the deposition, Liberty Mutual moved to preclude Mr. Sielfleisch from testifying.  Liberty Mutual argued his testimony was not fact testimony but rather opinion testimony, and because he was not properly disclosed as an expert witness and his opinions did not have the proper foundation, his testimony should be excluded. CentiMark opposed the motion.  The motion was granted in part and denied in part.  Judge Stohr disallowed Mr. Sielfleisch from testifying as to industry practices and offering his opinion as to whether the roof was properly installed, but he allowed CentiMark to play a redacted version of the video deposition at trial.  Trial Tr. Vo. III at 6-8.

Beginning on September 9, 2009, a four-day jury trial was held in the Underlying Litigation. Liberty Mutual called, among others, CentiMark employee Kurt Schneider to testify.  Steven Brauns, Robert Dennis, H. Michael Mogil, and Kevin O'Connell testified on CentiMark's behalf.  CentiMark was also allowed to play the videotaped deposition of Mark Sielfleisch, although it was edited to exclude some testimony as noted above.

The jury returned a verdict in favor of plaintiff and against CentiMark on the negligence claim in the amount of $450,000.00.  The verdict was in favor of CentiMark for the breach of

contract claim. CentiMark appealed to the Eighth Circuit Court of Appeals, however, the case was never reviewed on the merits because the parties settled for $390,000.00.

Sometime during or after the conclusion of the Underlying Litigation, CentiMark brought a state court suit against Loy Lange for the amount of the unpaid invoice – the claim Mr. Christofferson tried to bring as a counterclaim against Liberty Mutual in the Underlying Litigation. CentiMark settled the case for $25,000.00 of the $26,036.00 bill. During discovery in the present suit, CentiMark failed to produce documents showing the amount in legal bills it had incurred in pursuing the unpaid invoice during the Underlying Litigation and in the subsequent suit.

## IV. Discussion

Under Missouri law, in order to prevail on a legal malpractice claim, a plaintiff must prove: (1) that an attorney-client relationship existed; (2) that defendant acted negligently or in breach of contract; (3) that such acts were the proximate cause of the plaintiff's damages; and (4) that but for defendant's conduct the plaintiff would have been successful in the defense of its underlying claim. Boatright v. Shaw, 804 S.W.2d 795, 796 (Mo. App. 1991) See also, Scher v. Sindel, et al., 837 S.W.2d 350, 353 (Mo. App. 1992); Novich v. Husch & Eppenberger, 24 S.W. 3d 734, 736 (Mo. App. 2000).

"To establish that an attorney was negligent, a plaintiff must show that he [or she] failed to exercise that degree of skill and diligence ordinarily used under the same or similar circumstances by members of the legal profession." Thiel v. Miller, 164 S.W.3d 76, 82 (Mo. App. 2005); see Steward v. Goetz, 945 S.W.2d 520, 531 (Mo. App. 1997). Under Missouri law, a lawyer's negligence is a question of fact, not a question of law. Zweifel v. Zenge & Smith, 778 S.W.2d 372, 373 (Mo. App. 1989). In general, expert testimony is required to establish a lawyer's negligence.

<u>Roberts v. Sokol</u>, 330 S.W.3d 576, 581 (Mo. App. 2011). "[I]n order to escape the requirement of expert testimony, the alleged negligence or the question of negligence, must be clear and palpable to a jury of laymen, not a trial judge, although the trial judge is considered to be an expert." <u>Id.</u> "For this purpose the trial judge sets aside his own expertise and becomes a layman, as much as if the question were one of, for example, medical malpractice. This does not mean that the question of a lawyer's negligence can never be a matter of law. Like any other question of fact, it may become a matter of law if reasonable men (not reasonable lawyers) would have no grounds in the evidence to disagree." <u>Id.</u> (citing <u>Zweifel</u>, 778 S.W.2d at 373 n. 1 and 374).

### A.    Legal Malpractice Claims Related to the Warranty

The vast majority of CentiMark's legal malpractice claims against Mr. Christofferson and his firm relate to the warranty defenses, which Judge Stohr dismissed on partial summary judgment. CentiMark argues Mr. Christofferson failed to present the trial court with "easily ascertainable evidence" proving that the Non-Prorated Warranty was part of the contract between CentiMark and Loy Lange. CentiMark's central critique with respect to the Non-Prorated Warranty is that Mr. Christofferson should have contacted and deposed Robert Leicht, the individual who negotiated and entered into the contract with CentiMark on Loy Lange's behalf. CentiMark argues that defendants were negligent in not contacting and deposing Mr. Leicht because Mr. Christofferson would have learned and he could have proven that representatives of CentiMark and Loy Lange had discussed the Non-Prorated Warranty during the contract negotiations, that Loy Lange had some sort of sample warranty in the Proposal Binder, and that Loy Lange had received the Non-Prorated Warranty after completion of the roof. CentiMark argues that this evidence was critical and would have changed the outcome in the Underlying Litigation, because had Judge Stohr seen "the whole picture," Judge

Stohr would not have granted Liberty Mutual partial summary judgment on the affirmative defenses related to the warranty. <u>See</u> Doc. 89 at 5. CentiMark argues, "[b]ecause there was no evidence before the Court in the Underlying [Litigation] to prove that the parties knew the meaning of the 'Twenty (20) Year Labor and Material Total System Warranty,' the Court held that [the contract between CentiMark and Loy Lange] did not clearly reference the [Non-Prorated] Warranty, and so it was unenforceable. Mr. Leicht's testimony would have provided the exact evidence necessary to resolve this ambiguity in CentiMark's favor." <u>Id.</u> at 6.

The Court finds defendants are entitled to summary judgment with regard to defendants' handling of the warranty defenses because plaintiff cannot show that the result of the Underlying Litigation have been any different had defendants more thoroughly investigated and presented the defense to the trial court. It would seem CentiMark has misunderstood or misread Judge Stohr's partial summary judgment order. Judge Stohr did not find the contract between CentiMark and Loy Lange was ambiguous with respect to the warranty issue – quite the opposite. He found it was clear that the contract did not incorporate or reference the Non-Prorated Warranty. In finding that the contract did not incorporate the Non-Prorated Warranty, Judge Stohr did not look beyond the language of the contract and the language of the Non-Prorated Warranty. Judge Stohr noted that the only reference in the contract to a warranty was to a "Twenty (20) Year Labor and Material Total Systems Warranty," and the warranty dated October 4, 2000, was entitled a "NON-PRORATED LIMITED ROOF WARRANTY – EPDM ROOF SYSTEMS." Judge Stohr also noted that the Non-Prorated Warranty also included a clause providing that Non-Prorated Warranty "is to supersede[e] all prior agreements, including any 'terms or condition stated in the [August 14, 2000 contract],'" which, according to Judge Stohr, would indicate that the Non-Prorated Warranty was not part of the

August 14, 2000 contract. Judge Stohr found that the plain wording of contract and the plain wording of the Non-Prorated Warranty demonstrated that CentiMark and Loy Lange did not intend for the Non-Prorated Warranty to be part of the contract signed and dated August 14, 2000, and because the Non-Prorated Warranty was not supported by separate consideration, it was not enforceable. Based on the fact that Judge Stohr did not look outside the language of the documents, this Court finds that even if Mr. Christofferson had submitted evidence to the trial court that the Non-Prorated Warranty was discussed during contract negotiations, that Loy Lange had a copy of a sample warranty in a Proposal Binder, and that it received the Non-Prorated Warranty after completion of the project, this would not have changed Judge Stohr's determination that the Non-Prorated Warranty was not a part of the contract between CentiMark and Loy Lange. In other words, Judge Stohr would have granted Liberty Mutual partial summary judgment in any event.

In his order granting partial summary judgment, Judge Stohr did write that Liberty Mutual had argued that Loy Lange had not received a copy of the Non-Prorated Warranty dated October 4, 2000 until the commencement of the Underlying Litigation. He also noted that there was an affidavit from a Loy Lange employee who attested that Loy Lange did not negotiate, bargain for, or agree to the Non-Prorated Warranty, and that the company had not received a copy of the Non-Prorated Warranty until 2008. That said, Judge Stohr relied on none of these facts in deciding partial summary judgment in Liberty Mutual's favor. He did not look beyond the language of the two documents in deciding that the terms of the Non-Prorated Warranty were not incorporated by reference in the contract dated August 14, 2000.

In its memorandum in opposition to the present motion CentiMark states that it is a matter of disputed fact as to whether Judge Stohr would have changed his decision had he been given more

information about the contract negotiations, what was in the Proposal Binder, and the fact that Loy Lange did receive the Non-Prorated Warranty shortly after completion of the project. CentiMark argues there remains an issue of disputed fact because its legal expert, Tim Gammon, opines that the results of the partial summary judgment order would have been different had this evidence been presented to Judge Stohr. Plaintiff is attempting to improperly convert an issue of law into an issue of fact. Mr. Gammon is an expert on whether defendants were negligent, that is, whether they breached their duty of care. <u>Sokol</u>, 330 S.W.3d at 581. He is not an expert on causation. What is more, it is not the role of an expert to testify as to what the law is – that role is for the Court. <u>See, e.g.</u>, <u>Police Ret. Sys. of St. Louis v. Midwest Inv. Advisory Servs., Inc.</u>, 940 F.2d 351, 357 (8th Cir. 1991) (ruling that it was error to allow an expert to testify as to what the law is. "Explaining the law is the judge's job. . . . Some commentators have criticized the general rule against allowing experts to testify on the meaning of the law and have noted with approval the erosion of the rule in some courts. We cannot agree that the trend is a good one.")(citations omitted); <u>State v. Kinder</u>, 942 S.W.2d 313, 334 (Mo. 1996) (expert testimony is not admissible on issues of law); <u>George Weis Co., Inc. v. Dwyer</u>, 956 S.W.2d 335, 339 (Mo. App. 1997) ("an expert opinion on the law is not admissible because such testimony encroaches on the function of the judge to instruct the jury"). Judge Stohr's partial summary judgment ruling and how additional evidence would ave affected that ruling are issues of law, not fact. Plaintiff cannot create an issue of fact and avoid summary judgment by pointing to its expert's report on a matter of law.

In sum, CentiMark's claim against defendants for legal malpractice based on the issue of the warranty fails as a matter of law. Even if the Court were to conclude that defendants' investigation into the warranty defenses was negligent, plaintiff has not shown that defendants' negligence was

the proximate cause of CentiMark's damages, or that but for defendants' conduct CentiMark would have successfully defended the Underlying Litigation. The Court finds CentiMark's warranty defenses did not fail on account of Mr. Christofferson's and his firm's representation. Even if Mr. Christofferson and members of his firm had turned over every stone in investigating the warranty defenses, the warranty defense still would have failed because, according to Judge Stohr, the language of the August 14, 2000 contract was clear and unambiguous, and the contract did not reference or incorporate the Non-Prorated Warranty. This Court grants summary judgment in defendants' favor as to all issues related to the warranty defenses. Lange v. Marshall, 622 S.W.2d 237, 238 (Mo. App. 1981) ("negligence alone does not warrant a recovery for plaintiff; there must also be damage proximately resulting from an attorney's legal malpractice.").

**B.      Other Legal Malpractice Claims**

Although CentiMark states in its memorandum in opposition to summary judgment that the warranty issue is the most important subject of dispute in this case, there were other areas in which CentiMark claims defendants' conduct fell below the required duty of care in the Underlying Litigation. These include: defendants did not adequately prepare witnesses for depositions; defendants did not list or disclose expert witnesses in a timely manner, and therefore their testimony was unavailable at trial; defendants failed to make appropriate discovery requests or produce documents that would have aided in CentiMark's defense; defendants failed to plead contributory negligence; defendants failed to raise the economic loss doctrine; and defendants failed to name the correct party in the counterclaim. The Court finds defendants are entitled to summary judgment as to all of these claims.

### 1.    Witness Preparation

CentiMark identified Steven Brauns, Edwin Hurley, Kurt Schneider, Brad Ferguson, Mark Columbato, and Robert Dennis as witnesses who were not properly prepared to testify at their depositions.  CentiMark states that these witnesses, all of whom were CentiMark employees, were important witnesses because they had personal knowledge of CentiMark the Loy Lange roofing project and the emergency repairs following the storm.[4]  CentiMark's expert, Mr. Gammon, stated that he had no reason to believe that these witnesses did not testify truthfully during their depositions, but that their testimony might not have been complete because the relevant events occurred long before the depositions, and defendants did nothing to refresh their memories. CentiMark maintains that the deposition testimony was damaging because it was used against the witnesses during cross-examination at trial.

There are disputes of fact as to whether Mr. Christofferson met with these witnesses individually or as a group, and for how long.  These factual disputes, however, do not preclude the Court from entering summary judgment.  Even if the Court were to agree with plaintiff's legal expert, Mr. Gammon, that Mr. Christofferson did not adequately prepare these witnesses for deposition, and that this conduct fell below the required duty of care, plaintiff has pointed to no admissible evidence in the record to demonstrate that the outcome of the Underlying Litigation would have been different had the witnesses been properly prepared.

---

[4]CentiMark also claims these witnesses had knowledge about the warranty.  The Court will not address how testimony from these witnesses could have impacted the warranty defenses, because as noted above Judge Stohr decided the warranty issue on the documents alone, and testimony would not have changed the outcome his decision.

First, the Court notes Messrs. Ferguson, Hurley, and Columbato did not testify at trial in the Underlying Litigation, and, therefore, their deposition testimony was not used against them to CentiMark's detriment. As for the CentiMark witnesses who did testify at trial, Mr. Gammon points to Messrs. Brauns and Schneider as examples when deposition testimony was used against the witnesses to harm CentiMark's defense. More specifically, Mr. Gammon wrote in his report: "(1) _Braun_ TR. Vol. II - 203 vs. 204 visual inspection; (2) _Schneider_ TR. Vol. II. vs. visual inspection of wood blocking/Nailer nailers 35-55. Nailer/wood blocking impeachment TR Vol. II 35 - into gutter not nailer 37, 55 Loy Lange installed HVAC and dropped tool through roof. (What repair did CentiMark do? Did it raise gutter issue?)" See Doc. 81, Ex. T at 9. The Court finds Mr. Gammon's report to be cryptic on this matter, and there is no other explanation provided in Mr. Gammon's report, his deposition, or in CentiMark's memorandum in opposition to summary judgment. The trial transcript also sheds no light on the issue. The Court has reviewed the portions of the trial transcript to which Mr. Gammon referred, and finds there is no indication from the transcript as to how Messrs. Brauns's and Schneider's deposition testimony would have been different had Mr. Christofferson spent more time with these witnesses.

CentiMark also has not explained its theory as to how the result of the verdict would have been different had defendants properly prepared witnesses for deposition, let alone shown there is evidence supporting its theory. The Court deduces that CentiMark's theory has something to do with the hampering of its ability to prove at trial that there were hidden defects in the Loy Lange building that contributed to the roof peeling back. But without explanation and evidence connecting the dots, the Court finds that the theory is only speculation. There are no specific facts showing that

a genuine issue of fact exists that the results of the Underlying Litigation would have been more favorable to CentiMark had defendants better prepared CentiMark's witnesses for deposition.

2.    **Witness Disclosures**

In its complaint, CentiMark alleges that Mr. Christofferson and his firm failed to list material witnesses within the time designated in Judge Stohr's Case Management Order, and therefore, their testimony was not available at trial. More specifically, in its response to written discovery requests in the current litigation, CentiMark identified Kevin O'Connell, H. Michael Mogil, and Mark Sielfleisch as witnesses who were not properly disclosed.

Messrs. O'Connell and Mogil were disclosed as expert witnesses and both testified at trial in the Underlying Litigation. Mr. O'Connell, CentiMark's roofing expert, testified as to the installation and condition of the roof of the Loy Lange building. Judge Stohr granted in part and denied in part Liberty Mutual's motion in limine as to Mr. O'Connell. He allowed Mr. O'Connell to testify as to the condition of the masonry, but he was not allowed to offer an opinion as to how the masonry may have contributed to the roof uplift. Mr. O'Connell's testimony was not limited because he was improperly disclosed; it was limited because he was not an expert in masonry.

Mr. Mogil, CentiMark's meteorology expert, testified at trial as to the speed of the wind during the storm. Mr. Mogil's initial report noted that the winds appeared to be in excess of 90 miles per hour. Mr. Mogil later revised his expert report and stated that he had discovered the actual existence of wind gusts exceeding 100 mph. CentiMark's expert, Mr. Gammon, faults defendants for not disclosing the supplemental report to Liberty Mutual.

The Court finds there is no evidence of legal malpractice on Mr. Christofferson's part or that of his firm's with regard to Mr. Mogil. Mr. Mogil testimony regarding actual wind speeds was

objected to because Mr. Mogil developed the testimony after he was deposed and after the cut off for disclosures of expert opinions. Mr. Mogil's supplemental report, which CentiMark asserts should have been provided to opposing counsel, is dated July 1, 2009, after Mr. Christofferson withdrew from the case. What is more, Judge Stohr denied Liberty Mutual's motion in limine as to Mr. Mogil. Mr. Mogil did in fact testify at trial about 105 mph wind speeds, and this testimony was not stricken from the record.

CentiMark also identified Mark Sielfleisch as a witness who was not properly disclosed. CentiMark admits in its memorandum in opposition that it is not claiming Mr. Sielfleisch should have been disclosed as a non-retained expert, but because of Mr. Christofferson's late disclosure, Mr. Sielfleisch was not allowed to offer helpful testimony, including his opinion that the roof was installed according to industry standards. The Court finds that Mr. Sielfleisch was not allowed to offer his opinion regarding the 2000 installation not due to his late disclosure, but because Mr. Sielfleisch himself testified that he had no knowledge as to whether the roof was properly installed. During his deposition, which took place a few days before trial, Mr. Sielfleisch testified that he had not been on the roof prior to the time of the damage in 2006, and as such, he had no knowledge regarding the installation of the roof. As for industry standards, the Court finds it was not negligence on the part of defendants not to designate Mr. Sielfleisch as a expert on roofing industry standards because they had already designated a roofing expert, Mr. O'Connell. There is no admissible evidence that the verdict would have been more favorable to CentiMark had Mr. Sielfleisch been allowed to offer his opinions on roofing.

### 3. Economic Loss Doctrine

In the Underlying Litigation, Liberty Mutual brought two claims against CentiMark for breach of contract and for negligence. CentiMark and its expert, Mr. Gammon, fault defendants for not filing a dispositive motion to dismiss Liberty Mutual's tort claim based on the economic loss doctrine. In Missouri, the economic loss doctrine, in general, prohibits a plaintiff from seeking to recover in tort for economic losses that are contractual in nature. A number of Missouri decisions have held that recovery in tort for pure economic damages are only limited to cases where there is personal injury, damage to property other than that sold, or destruction of the property sold due to some violent occurrence. See Wilbur Waggoner Equip. & Excavating Co. v. Clark Equip. Co., 668 S.W.2d 601, 603 (Mo. App. 1984); Forrest v. Chrysler Corp., 632 S.W.2d 29 (Mo. App. 1982); .Clevenger & Wright Co. v. A.O. Smith Harvestore Prods., Inc., 625 S.W.2d 906 (Mo. App. 1981); Gibson v. Reliable Chevrolet, Inc., 608 S.W.2d 471 (Mo. App. 1980); Crowder v. Vandendeale, 564 S.W.2d 879, 881 (Mo. 1978).

CentiMark claims that defendants should have raised the economic loss doctrine, which would have been a complete bar to Liberty Mutual's tort claim. And because the verdict was in CentiMark's favor as to the contract claim, it argues an adverse verdict would not have been entered against the company in the Underlying Litigation. In response, defense counsel defends Mr. Christofferson's supposed decision not to raise the economic loss doctrine on the ground that the doctrine did not apply to the facts of the Underlying Litigation. Defendants also argue that CentiMark failed to discuss relevant Missouri law on the economic loss doctrine, and instead it referred this Court to an out of state decision.

The Court agrees that the economic loss doctrine did not apply to the Underlying Litigation, and this is what Judge Stohr also found. Mr. Christofferson did in fact raise the economic loss doctrine in a motion to dismiss, and Judge Stohr denied the motion on the grounds that the doctrine did not apply to the case as pleaded. See 4:08-CV-230 DJS, Docs. 9 and 10. The Court is baffled as to why neither side referred the undersigned to Mr. Christofferson's motion or Judge Stohr's Order. What is more, the economic loss doctrine was raised post-trial by CentiMark's replacement counsel, and Judge Stohr again found the doctrine did not apply to the case. The Court finds CentiMark's claim that it was legal malpractice for defendants not to raise the economic loss doctrine in the Underlying Litigation is entirely without merit.

### 4.    Contributory Negligence Defense

CentiMark also argues that a contributory negligence defense would have shielded CentiMark from at least some liability, had it been properly asserted in CentiMark's original answer. CentiMark argues that defendants did not plead contributory negligence in CentiMark's answer to Liberty Mutual's complaint, and therefore it was forever waived under the Federal Rule of Civil Procedure 8(c)(1).

Despite plaintiff's assertion to the contrary, an affirmative defense is not forever waived if is not asserted in an original answer. There are means of remedying the omission. For example, a defendant may move to amend an answer to add an affirmative defense. See Fed. R. Civ. P. 15(a). A defendant may also present evidence of the defense at either summary judgment or trial by express or implied consent of the parties under Rule 15(b)(2). See Coohey v. United States, 172 F.3d 1060, 1064 (8th Cir. 1999). Based on the record before it, there is no evidence that following defendants'

withdrawal from the Underlying Litigation, CentiMark's replacement counsel attempted to mitigate the harm and plead the affirmative defense of contributory negligence.

Furthermore, even if the Court were to conclude that defendants were negligent in failing to plead the affirmative defense of contributory negligence in CentiMark's original answer, this Court finds plaintiff still does not meet all the requirements to establish a claim of legal malpractice. CentiMark has not sufficiently identified what theory or evidence of contributory negligence its replacement counsel was precluded from presenting at trial. CentiMark's new trial counsel did not ask for and the jury was not given a contributory negligence instruction. That said, CentiMark did present evidence that Loy Lange may not have properly maintained its building in that there was deteriorating mortar and possibly a detached wooden nailer beneath the roof system. What additional evidence would have been presented had defendants asserted contributory negligence as a defense in the original answer? CentiMark does not say, and the Court is left to speculate. Based on the record before the it, the Court finds there is no evidence from which a finder of fact could conclude that the verdict in the Underlying Litigation would have been more favorable to CentiMark had defendants asserted a contributory negligence defense in the original answer.[5]

### 5. CentiMark's Unpaid Invoice Claim

In the Underlying Litigation, defendants filed a counterclaim on behalf of CentiMark against Liberty Mutual for an unpaid invoice in the amount of $26,000 for the emergency repair work CentiMark performed on Loy Lange's roof following the storm. Liberty Mutual moved to dismiss

---

[5]It is possible that the jury in the Underlying Litigation did conclude CentiMark was only partly to blame for damages caused by the roof peeling back. The jury did not award Liberty Mutual all the damages it was seeking. Liberty Mutual had sought $1,234,735.81 in damages in its complaint against CentiMark, but the jury only awarded Liberty Mutual $450,00.00.

the counterclaim arguing that CentiMark had sued the wrong party. It argued that Loy Lange rather than Liberty Mutual was responsible for the unpaid invoice. Judge Stohr agreed and dismissed the counterclaim without prejudice. Later, with the assistance of different counsel, CentiMark filed a claim against Loy Lange in state court. This suit was ultimately settled for $25,000.00.

CentiMark argues that the proper procedure would have been for defendants to have filed a motion to join Loy Lange in the Underlying Litigation and to have asserted a cross-claim against the company. Instead, defendants wasted time and money "chasing" Liberty Mutual for a bill that it had no obligation to pay. The Court agrees that defendants sued the wrong party in interest and that there is evidence this fell beneath the required standard of care, but defendants are entitled to summary judgment on this issue because there is insufficient evidence of damages, which is an element of a legal malpractice claim. Boatright, 804 S.W.2d at 796; Lange, 622 S.W.2d at 238.

CentiMark argues that it was damaged by defendants' conduct because it incurred unnecessary legal fees and expenses. In support of damages, CentiMark submits the affidavit of Brian W. Raymore, Senior Vice President of CentiMark's Safety and Risk Department. Mr. Raymore attests that CentiMark incurred unnecessary attorneys' fees and litigation expenses as a result of the counterclaim defendants brought against Liberty Mutual. He also attests that after the counterclaim was dismissed, CentiMark hired a different firm to prosecute the claim against the proper party, Loy Lange, and that the company incurred additional attorneys' fees and expenses. Mr. Raymore did not, however, state how much these fees or expenses were, and there were no exhibits or documentation attached to his affidavit or provided elsewhere in the record. Defendants assert, and CentiMark does not dispute, that CentiMark did not disclose or produce any documents or evidence in discovery to support a damage amount based on the ill-advised counterclaim. For

example, CentiMark did not produce any legal bills. Furthermore, CentiMark's expert, Mr. Gammon, states in his report that CentiMark suffered no damages as a result of the counterclaim because CentiMark was able to bring a separate suit and recover damages for the unpaid invoice.

The Court finds there is evidence to support plaintiff's claim that defendants were negligent in bringing a counterclaim against the wrong party, but there is no issue of fact to submit to the jury as to the amount of the damages resulting from the ill-fated counterclaim because CentiMark failed to disclose or produce evidence of its damages.[6] The affidavit CentiMark submitted to support its damages claim is not enough to survive summary judgment. "Self-serving, conclusory statements without support are not sufficient to defeat summary judgment." <u>Armour and Co., Inc. v. Inver Grove Heights</u>, 2 F.3d 276, 279 (8th Cir. 1993). CentiMark, as the party resisting summary judgment, has the burden to designate the specific facts that create a triable question of fact, which it has failed to so. <u>See</u> <u>Crossley v. Georgia-Pacific Corp.</u>, 355 F.3d 1112, 1114 (8th Cir. 2004). The Court finds defendants are entitled to summary judgment as to the counterclaim issue because plaintiff has not shown there is a genuine issue of material fact that CentiMark suffered an amount of damages as a result of defendants filing a counterclaim against the wrong party in interest.

---

[6]The legal fees and expenses CentiMark incurred in pursuing the claim against Loy Lange in state court were not the result of defendants' conduct as CentiMark suggests. It is clear from the record that CentiMark would have had to incur fees in pursuing the unpaid invoice claim no matter how and where the claim was filed. Loy Lange would have fought the claim in any event, and it is sheer speculation that it would have been cheaper to have joined Loy Lange in the Underlying Litigation, even if Judge Stohr had allowed the joinder, which is debatable. <u>See</u> Fed. R. Civ. P. 20(a)(2) (claim to be joined must arise "out of the same transaction, occurrence, or series of transactions or occurrences").

## V. Conclusion

The Court finds defendants are entitled to summary judgment on all claims of legal malpractice against them. As to plaintiff's claims that defendants failed to adequately investigate and present evidence in support of CentiMark's warranty defense, the Court finds plaintiff has failed to show causation in that the trial judge in the Underlying Litigation rested his decision on partial summary judgment based on the language of the contract and warranty. Additional evidence would not have changed the outcome of his decision. As to plaintiff's allegations that defendants failed to properly prepare witnesses for deposition, to disclose witnesses, to disclose or request documents in discovery, and to assert defenses, including the economic loss doctrine and contributory negligence, the Court finds plaintiff has not shown there are genuine issues of material facts that defendants were indeed negligent or that the outcome of the Underlying Litigation would have been different. Finally, the Court does find there is evidence to support plaintiff's claim that defendants were negligent in filing a counterclaim against the wrong party, but there is no genuine issue of material fact that CentiMark was damaged as a result.

Accordingly,

**IT IS HEREBY ORDERED** that Philip J. Christofferson and Cockriel and Christofferson L.L.C.'s motion for summary judgment is **GRANTED.** [Doc. 78]

**IT IS FURTHER ORDERED** that Philip J. Christofferson and Cockriel and Christofferson L.L.C.'s motion for leave to file in excess of page limitation is **GRANTED.** [Doc. 79]

**IT IS FURTHER ORDERED** that on or before **February 1,2013,** the parties shall inform the Court, in writing, as to whether they intend to proceed to trial on Philip J. Christofferson and Cockriel and Christofferson L.L.C.'s counterclaim against CentiMark Corporation for unpaid attorney's fees.

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this __29th__ day of January, 2013.